USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/14/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
BRANDON BANKS,                        :
                                      :
                  Plaintiff,          :
                                      :  08 Civ. 7463 (RJS)(THK)
       -against-                      :
                                      :  **REPORT AND RECOMMENDATION**
                                      :
CORRECTION OFFICER STEWART,           :
CORRECTION OFFICER BENJAMIN, and      :
CORRECTION OFFICER LEWIS,             :          **Pro Se**
                                      :
                                      :
                  Defendants.         :
----------------------------------X
**TO: HON. RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Brandon Banks ("Plaintiff"), proceeding pro se,
brings this action pursuant to 42 U.S.C. § 1983, against Defendants
Correction Officer Stewart ("Defendant Stewart"), Correction
Officer Benjamin ("Defendant Benjamin"), and Correction Officer
Lewis ("Defendant Lewis") (collectively, "Defendants"), alleging
that they violated his constitutional rights by subjecting him to
a dangerous working condition and depriving him of adequate medical
care.   Specifically, Plaintiff claims that, while he was
incarcerated as a pretrial detainee at the George Motchan Detention
Center ("GMDC") at Riker's Island, Defendant Stewart improperly
"threatened" him to work on a dangerous meat slicing machine, for
which he was not trained and normally prohibited from using. As a
result, Plaintiff cut his finger and, according to Plaintiff,
Defendants delayed his access to medical care.   Defendants have

1

moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the Court recommends that Defendants' motion be granted.

**BACKGROUND**

The following facts, except as otherwise noted, are undisputed and drawn from both parties' Local Civil Rule 56.1 Statements, affidavits, and Plaintiff's deposition.

Plaintiff was an inmate in the custody of the New York City Department of Corrections ("DOC") at all relevant times. The events at issue in this case took place primarily at GMDC, where Plaintiff was incarcerated as a pretrial detainee. Plaintiff alleges that, on June 3, 2008, when he was working in the main kitchen of GMDC, he cut his finger while using a meat slicer, a piece of equipment which was off-limits to inmates. Plaintiff alleges that the three officers on duty at the time of the incident, Defendants Benjamin, Stewart, and Lewis, delayed his access to the medical clinic until June 4, 2008, risking infection and amputation of the finger.

**I.   The Slicing Machine Incident**

On June 3, 2008, Plaintiff was assigned to work in the main kitchen of GMDC. (See Complaint, dated Sept. 11, 2008 ("Compl."), ¶¶ 4-5.) Plaintiff alleges that Defendant Stewart threatened and forced him to use a meat slicer that was off-limits to inmates. (See Compl. ¶ 6; Declaration of Lesley Berson, dated Oct. 19, 2009

2

("Berson Decl."), Ex. C (Plaintiff's Deposition, dated Aug. 7, 2009
("Pl. Dep."), at 33:4-23).)[1]  Indeed, DOC policy prohibits inmates
from using sharp implements such as slicing machines or knives.
(See Declaration of Roland Stewart, dated Oct. 12, 2009 ("Stewart
Decl."),  ¶ 5.)  Plaintiff also claims he had no experience using
the machine.

At the time of the incident, Defendant Stewart was assigned to
the "A" post of the main kitchen.  That post - also known as "the
Bubble" - is an enclosed room where officers are responsible for
administrative duties related to that particular area of the jail.
Stewart's responsibilities included maintaining the area logbook,
tracking the housing areas of all inmates working in the kitchen
area, answering the telephone, and dispensing kitchen supplies such
as hats, gloves, and aprons. (See Stewart Decl. ¶ 4.)  Defendant
Stewart maintains that he did not have responsibility for
supervising inmates in the kitchen area, and he never ordered
Plaintiff to use the slicing machine or heard anyone else give such
an order.  Stewart acknowledges that inmates are not permitted to
use the slicing machine.  (See Stewart Decl. ¶ 5.)  Further, both
Defendant Stewart and Defendant Benjamin assert that they did not
see Plaintiff cut himself on June 3.  (See id. ¶ 6; Declaration of

---

[1] In his grievance, dated June 3, 2008, Plaintiff alleged
that both Officers Stewart and Benjamin forced him to use the
slicing machine. (See Ex. B to Plaintiff's Opposition to
Defendants' Motion.)

3

William Benjamin, dated Oct. 9, 2009 ("Benjamin Decl."), ¶¶ 6,8.)
According to Defendant Benjamin, the slicing machine is not visible
from his post at the loading dock, and Plaintiff was not working
under his supervision.  (See Benjamin Decl. ¶¶ 4-6.)

Plaintiff alleges he hurt himself on the machine between 4:30
and 5:30 p.m., and approached Defendant Benjamin, who wrapped up
his finger.  (See Pl. Dep. at 24:4-6, 23-24.)[2]  Plaintiff claims
that Bryan Smith, a kitchen worker, witnessed the entire incident.
(See Compl. ¶ 9; Opp. Decl. Ex. A (Affidavit of Bryan Smith, dated
Nov. 17, 2009).)[3]

The following day, Plaintiff had a scheduled court appearance.
Therefore, Plaintiff did not sign up for sick call, although he was
familiar with the facility's procedure. (Pl. Dep. at 31:13-19.)
Returning from his court appearance on June 4, Plaintiff claims
blood was dripping from his finger.  Plaintiff asked Defendant
Lewis, who was assigned to the "A" post at the time, if he could go
to the clinic. Lewis filled out an incident report form and called
in the captain, who let Plaintiff go to the clinic. (Id. at 36:25-
37:14.)   Defendant Lewis claims that Plaintiff approached him

_____

[2] Plaintiff alters this allegation slightly in his
Declaration in Opposition to the Summary Judgment Motion ("Opp.
Decl.") and states that Defendants Stewart and Benjamin told him
to wrap his own finger with tape. (See Opp. Decl. ¶ 7.)

[3] No discovery was taken from Jaquan Dupree and Bernard
Shepard, both of whom Plaintiff alleges were also aware of the
incident in the kitchen. (See Pl. Dep. at 30:7-23.)

regarding his injury on the evening of June 4, for the first time. (<u>See</u> Declaration of Dennis Lewis, dated Oct. 9, 2009 ("Lewis Decl."), ¶ 4.)

Plaintiff alleges that he originally informed Defendant Lewis of his injury on June 3, and was denied access to the clinic. Defendant Lewis admits that he was assigned to work in Dorm 3-Lower on June 3, and that he and other correction officers are required to pat-frisk all detainees entering the housing unit, but denies that Plaintiff ever requested or required medical attention on June 3. (<u>See</u> Defendants' Responses and Objections to Plaintiff's Request for Admissions, dated Sept. 9, 2009, at 3.)

## II. Treatment

The medical staff at the GMDC clinic examined Plaintiff's finger and gave him a tetanus shot and pain medication. (<u>See</u> Berson Decl. Ex. D, at 057-058.) Plaintiff alleges that the nurse told him the cut was infected, and that Doctor David Kerrison said that if he had waited any longer to receive medical attention, the finger would have to be amputated. (<u>See</u> Compl. ¶ 10; Pl. Dep. at 49:1-6.) On the Hospital Transfer Form, Doctor Kerrison noted that. Plaintiff sustained the injury on June 3, did not seek immediate attention, and that an "officer wrapped [Plaintiff's] finger with gauze and tape." (<u>See</u> Berson Decl. Ex. D, at 130.) Plaintiff was then transferred to Elmhurst Hospital for further evaluation and treatment. (<u>See</u> Berson Decl. Ex. D, at 057-058, 130.)

The treating physicians at Elmhurst determined that Plaintiff's injury did not require stitches. (See id. at 125; Pl. Dep. at 51:18-25.) Plaintiff's medical chart notes that Plaintiff's hand appeared normal, that his wrist was not swollen and had a full range of motion, and that his finger had "exposed tissue but no bone visible." (Berson Decl. Ex. D, at 124.) The report further indicates that there was no sign of infection and that Plaintiff's pain level at the time of discharge was 1 out of 10. (Id. at 125; Pl. Dep. at 52:1-6.) The physicians at Elmhurst dressed Plaintiff's finger with antibiotic ointment, prescribed an over-the-counter pain reliever, and discharged him. (Berson Decl. Ex. D, at 125.)

Back at the GMDC clinic, Plaintiff received daily medical attention for his cut. (Id. at 064, 070.) The medical staff changed the dressing on Plaintiff's finger almost daily from June 5, 2008 through July 4, 2008. (Id. at 070; Pl. Dep. at 52:7-9.) On July 7, 2008, the GMDC medical staff determined that the cut was healed and discontinued the order that the dressing on Plaintiff's finger be changed daily. (See Berson Decl. Ex. D, at 089, 090.) On September 17, Plaintiff signed a Patient Refusal of Treatment that indicated he was "feeling healed." (See Berson Decl. Ex. D, at 105; Pl. Dep. at 50:4-12.)

At his deposition in August 2009, Plaintiff stated that his finger still hurt and it had affected his ability to lift things

6

and to write. (See Pl. Dep. at 46:2-6, 13-24.) Plaintiff, however, admitted that he hand-wrote a grievance on June 3, 2008, immediately after the injury, and later hand-wrote his federal complaint on September 11, 2008. (Id. at 47:1-12; see also Berson Decl. Ex. E.)

### III. Plaintiff's Grievance

DOC has a five-step administrative Inmate Grievance Resolution Program ("IGRP") to address and resolve inmate grievances. (See Berson Decl. Ex. F.) An inmate must first submit his grievance to the Inmate Grievance Resolution Committee ("IGRC") by placing it in a grievance box, delivering it to his facility's Grievance Office, or delivering it to a Grievance Coordinator. If the inmate does not receive a response from the IGRC within five days, the inmate must file a specific form at the Grievance Office to request a hearing. (See id. at 9-10.) This allows the IGRC to render a decision, thus permitting the inmate, if he chooses, to proceed to the second step of the procedure - an appeal of an adverse decision to the Commanding Officer of the facility.[4] (Id. at 11.) However, the relevant directive states that grievances not decided within the five-day time limitation "may be appealed to the next step" - the inmate must simply submit the appropriate form to the Grievance Office. (Id. at 15.) The next step in the procedure is an appeal to

---

[4] Such an appeal to the warden is effected by filing the appeal with the Grievance Office.

the Central Office Review Committee ("CORC"). Within five days of receipt of a CORC decision, the grievant may appeal to the New York Board of Correction by filing with the Grievance Office. (See id. at 15-16.)

In Plaintiff's grievance, dated June 3, 2008, he alleged that Defendants Benjamin and Stewart "forced" him to use the slicing machine and denied him access to the medical clinic after he cut his finger. (See Pl.'s Grievance at Ex. E.)  Plaintiff did not make any allegations about Defendant Lewis.[5]  Plaintiff testified that he filed his grievance in the GMDC grievance box in his housing area. (See Pl. Dep. at 43:19-25.)

When Plaintiff did not receive a response to his grievance within five days, he did not request a hearing, but instead waited several months, until August 2008, and wrote to the warden.  (See Pl. Dep. at 44:4-5.) Despite failing to receive a response to his "appeal," Plaintiff did not take any other steps with regard to the grievance process. Specifically, Plaintiff did not appeal to the CORC.  Plaintiff filed the Complaint in this action on September 11, 2008.

**DISCUSSION**

Defendants Stewart, Benjamin, and Lewis make three arguments in support of their motion for summary judgment: (1) Plaintiff

---

[5] In his deposition, Plaintiff added that he showed his injury to Defendant Lewis on June 3, who likewise denied him access to the clinic. (See Pl. Dep. at 30:3-5.)

failed to exhaust his administrative remedies; (2) even if Plaintiff was ordered to use the meat slicing machine, this does not give rise to a constitutional violation simply because the prison prohibits such use; (3) Plaintiff cannot state a federal claim for inadequate medical care stemming from the cut to his finger, because the cut was not sufficiently serious, any delay in medical treatment did not cause Plaintiff's condition to worsen, and Defendants did not act with "deliberate indifference"; and (4) in the alternative, all three Defendants are entitled to qualified immunity.

## I. Summary Judgment Standards

### A. <u>Federal Rule 56</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment may not be granted unless a court determines that there is no genuine issue of material fact to be tried, and that the moving party is entitled, as a matter of law, to judgment in its favor. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); <u>Shannon v. N.Y. City Transit Auth.</u>, 332 F.3d 95, 98 (2d Cir. 2003). The burden of demonstrating the absence of any genuine dispute as to material facts rests upon the party seeking summary judgment. See <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). Once a properly supported motion for summary judgment has

9

been submitted, the burden shifts to the non-moving party to make a sufficient showing to establish the essential elements of the claims on which it bears the burden of proof at trial. See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003); Peck v. Pub. Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553).

In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, courts are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006). However, the non-moving party must put forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). The non-moving party may not rely on its pleadings, mere allegations, simple denials, conclusory statements, or conjecture to create a genuine issue for trial. See Anderson, 477 U.S. at 256-57, 106 S. Ct. at 2514; Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007).

B. Local Rule 56.1

Under the Southern District of New York's Local Civil Rule

10

56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule of the Southern District of New York 56.1(a) ("Local Rule 56.1"). Significantly, "[e]ach numbered paragraph in the statement of material facts set forth in the statement . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement . . . by the opposing party." Local Rule 56.1(c). Both parties' statements must be "followed by citation to evidence which would be admissible" under Federal Rule of Civil Procedure 56(e). Local Rule 56.1(d). Finally, the moving party must provide notice in a separate document, to a non-moving, pro se party, that failure to comply with Local Rule 56.1 may result in dismissal of the case without trial. See Local Civil Rule of the Southern District of New York 56.2 ("Local Rule 56.2").

Defendants, as the moving party, adhered to the requirements of Local Rule 56.1 by submitting a separate statement of facts with citations to supporting evidence in the record, and by advising Plaintiff that failure to properly respond in accordance with the rules could result in facts being deemed admitted and the case being dismissed without trial. (See Defendants' Notice to Pro Se Litigant Opposing Summary Judgment, dated Oct. 19, 2009.)

11

Plaintiff responded to Defendants' motion by the Court-ordered deadline of November 18, 2009. (See Declaration of Brandon Banks in Opposition to Summary Judgment Motion, dated Nov. 17, 2009.) Although Plaintiff's 56. 1 Statement did not conform exactly to the requirements of Local Rule 56.1, because Plaintiff is a pro se litigant, the Court will accept Plaintiff's submission. See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (stating that a pro se plaintiff is "not excused from meeting the requirements of Local Rule 56.1, . . . [but] where a pro se plaintiff fails to submit a proper [opposing statement], the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions").

## II.  Plaintiff's Failure to Exhaust his Administrative Remedies under the PLRA

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002); accord Falid v. Ellen, 593 F.3d 233, 248 (2d Cir.

12

2010).   Moreover, a prisoner must properly exhaust his administrative remedies, that is, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378, 2386 (2006); accord Davis v. New York, 311 F. App'x 397, 399 (2d Cir. 2009).

Therefore, before proceeding in this Court, Plaintiff was required to comply with all five steps of the Department of Correction's Inmate Grievance Resolution Program ("IGRP"). (See Berson Decl. Ex. F, at 8-15.) See also Martinez v. Williams, 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004); Soto v. Belcher, 339 F. Supp. 2d 592, 595 (S.D.N.Y. 2004). A prisoner must pursue all levels of administrative procedure, even when he does not receive a response to his initial grievance, and "strict compliance" with the procedure is required. See Chisolm v. N.Y.C. Dep't of Corr., No. 08 Civ. 8795 (SAS), 2009 WL 2033085, at *2 (S.D.N.Y. July 13, 2009).

Here, Plaintiff states that he completed the first step in the IGRP process when he filed a grievance about the incident in the kitchen, and deposited it in the grievance box in his housing area on June 3. (See Pl. Dep. at 44:1-3, 43:19-25; Berson Decl. Ex. E.) However, Plaintiff took no additional steps to exhaust his administrative remedies save for writing to the warden several months later, when he did not hear back from the IGRP committee

13

regarding his grievance.  He did not seek a hearing within five days of filing his grievance, as required, and did not file any appeals with the CORC or Board of Correction.  Plaintiff does not argue that he exhausted his administrative remedies, but, rather, that his failure to do so should be excused.  Plaintiff contends that (1) administrative remedies were not "available" to him; (2) he did not receive a response to his grievance; and (3) he made "reasonable attempts" to appeal his grievance. (See Pl. Opp. at 5-6.)

> The mandatory exhaustion requirement may be excused when
>
> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)). If the specific set of grievance procedures which apply to the inmate's claim provide redress for the inmate's specific complaint, administrative remedies are considered "available."  See id. at 177.

Plaintiff's admissions and conduct demonstrate that he was aware that the DOC grievance procedure was the proper place to raise his initial concern about the incident of June 3, 2008. Plaintiff's contention that remedies were not available to him

14

because the IGRC did not respond to his grievance, is of no avail. The IGRP explicitly provides that if an inmate does not receive a response within five days, the inmate may move directly to step two of the process by filing a form with the Grievance Office to request a hearing. (See Berson Decl. Ex. F, at 9-10.)  Plaintiff did nothing to pursue his grievance for two months, at which time he simply wrote a letter to the warden and pursued no further remedies. (See Berson Decl. Ex. E.)  Therefore, the Court rejects Plaintiff's argument that administrative remedies were not "available" to him. See, e.g., Torres v. Carry, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009) (finding that an inmate's failure to appeal a grievance to the CORC is not excused because the superintendent did not respond to the initial grievance).[6]

Finally, Plaintiff argues that he made "reasonable attempts" to exhaust his administrative remedies.  However, submitting a single letter to the Grievance Office and a second letter to the Warden two months later, does not come close to pursuing the

---

[6] Plaintiff argues in his memorandum of law in opposition to Defendants' motion that, because he did not receive an Inmate Handbook, "prison authorities actively interfered with plaintiff's ability to invoke such remedies." (Pl. Brief in Opposition, dated Nov. 17, 2009 ("Opp. Mem."), at 5.)  However, Plaintiff does not claim in his brief or his sworn affidavit in opposition to the motion that he was unaware of DOC grievance procedures, and any such claim is belied by his filing of a grievance.  See Ruggiero, 467 F.3d at 178 ("Whether or not Ruggiero actually possessed the handbook, he nowhere claims that he was unaware of the grievance procedures contained within it or that he did not understand those procedures.").

exhaustion procedures that were available.  <u>See</u> <u>Jones v. Meckley</u>,
No. 07 Civ. 10414 (RWS), 2010 WL 148616, at *2 (S.D.N.Y. Jan. 14,
2010) (holding that a plaintiff who submitted seven grievances,
spoke to the Inspector General's office, and made other inquiries,
failed to exhaust since he "at best performed only the first step
of the four-step IGRP process"); <u>Chisholm v. New York City Dep't</u>
<u>of Corr.</u>, No. 08 Civ. 8795 (SAS), 2009 WL 2033085, at *1-2
(S.D.N.Y. July 13, 2009) (although prisoner filed a grievance,
failure to request grievance hearing or appeal, as required by
IGRP, was a failure to exhaust all administrative remedies
available, and required dismissal); <u>Marcello v. Dep't of Corr.</u>, No.
07 Civ. 9665 (NRB), 2008 WL 2951917, at *3 (S.D.N.Y. July 30, 2008)
(although plaintiffs filed grievances, they failed to request a
hearing before the IGRC after receiving no response to the
grievances and did not appeal to the Warden, the CORC, or Board of
Correction, and, thus, were barred from bringing suit); <u>Wesley v.</u>
<u>Hardy</u>, No. 05 Civ. 6492 (CM), 2006 WL 3898199, at *4 (S.D.N.Y. Dec.
12, 2006) ("If a prisoner submits a grievance and receives no
response, he cannot be considered to have been actively obstructed
or frustrated, as he is free to appeal to the next level of
review.").

Plaintiff has not provided any evidence to support an
exemption from the exhaustion requirement and, thus, the Court
recommends that Defendants' summary judgment motion be granted for

failure to exhaust administrative remedies. Moreover, the dismissal of the action should be with prejudice since Plaintiff is no longer in DOC custody and can no longer exhaust his administrative remedies. See Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004).

In the interest of completeness, the Court will also address the merits of Plaintiff's claims.

## III. Dangerous Condition and Excessive Risk of Harm

Plaintiff contends that in ordering Plaintiff to work on the meat slicing machine, notwithstanding the fact that he was not trained to operate the machine and prison regulations prohibited prisoners from using the machine, Defendant Stewart was deliberately indifferent to his safety and subjected him to a dangerous condition and excessive risk of harm. (See Opp. Mem. at 7-9.) Defendants misconstrue the claim, arguing merely that a constitutional violation does not arise simply because an order is given in violation of prison regulations. (See Defs.' Reply Mem. at 8-9.)

### A. Legal Standard

The Due Process Clause of the Fourteenth Amendment governs claims relating to conditions of confinement of pretrial detainees. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only
> the protection against deprivation of liberty without due
> process of law, we think that the proper inquiry is

17

whether those conditions amount to punishment of the
detainee.  For under the Due Process Clause, a detainee
may not be punished prior to an adjudication of guilt in
accordance with due process of law.

Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979).

Thus, a court must determine whether a challenged disability has

been imposed on a pretrial detainee "for the purpose of punishment

or whether it is but an incident of some other legitimate

governmental purpose." Id. at 538, 99 S. Ct. at 1873.

> Absent a showing of an expressed intent to punish on the
> part of detention facility officials, that determination
> generally will turn on whether an alternative purpose to
> which [the restriction] may rationally be connected is
> assignable for it, and whether it appears excessive in
> relation to the alternative purpose assigned [to it].
> Thus, if a particular condition or restriction of
> pretrial detention is reasonably related to a legitimate
> governmental objective, it does not, without more, amount
> to "punishment." Conversely, if a restriction or
> condition is not reasonably related to a legitimate goal
> - if it is arbitrary or purposeless - a court permissibly
> may infer that the purpose of the governmental action is
> punishment that may not constitutionally be inflicted
> upon detainees *qua* detainees.

Id. at 538-39, 99 S. Ct. at 1873-74 (internal quotation marks and

citations omitted).

A pretrial detainee's rights under the Fourteenth Amendment

concerning his conditions of confinement, "are at least as great as

the Eighth Amendment protections available to a convicted

prisoner." City of Revere v. Mass. General Hosp., 463 U.S. 239,

244, 103 S. Ct. 2979. 2983 (1983).  Thus, as in the medical care

area, "[c]laims for deliberate indifference to a serious threat to

the health or safety of a person in custody should be analyzed

18

under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." <u>Caizzo v. Koreman</u>, 581 F.3d 63, 72 (2d Cir. 2009).

Prison officials have an affirmative duty to provide for prisoners' basic needs, including their "reasonable safety." <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994) (safety from attacks by other inmates); <u>Helling v. McKinney</u>, 509 U.S. 25, 32-33, 113 S. Ct. 2475, 2480-81 (1993) (safety from dangers posed by secondhand smoke); <u>Wilson v. Seiter</u>, 501 U.S. 294, 303-05, 111 S. Ct. 2321, 2327-28 (1991) (safety from dangerous conditions of confinement, including "overcrowding, excessive noise, insufficient locker storage space, inadequate heating and cooling, improper ventilation, unclean and inadequate restrooms, unsanitary dining facilities and food preparation, and housing with mentally and physically ill inmates").

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., . . . reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment.

<u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 200, 109 S. Ct. 998, 1005 (1989). Such wanton pain and suffering is "simply not part of the penalty that criminal offenders pay for their offenses against society." <u>United States v. Walsh</u>, 194 F.3d 37, 49 (2d Cir. 1999) (quoting <u>Boddie v. Schneider</u>, 105 F.3d 857,

861 (2d Cir. 1997)).

To satisfy the objective element of a conditions-of-confinement claim, a plaintiff must allege that the challenged activity or condition posed "a substantial risk of harm." See Hope v. Pelzer, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514 (2002); Farmer, 511 U.S. at 833-34, 114 S. Ct. at 1976-77; Helling, 509 U.S. at 35, 113 S. Ct. at 2481. Mere discomfort that does not pose a serious risk to health or safety will not satisfy this standard. See Trammel v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of mattress, toiletries, and nearly all clothing for approximately two weeks - while perhaps uncomfortable - did not pose serious risk to inmate health and safety).

The subjective analysis focuses on whether the charged official was "deliberately indifferent" to a risk of serious harm to a prisoner's health or safety. See Hope, 536 U.S. at 737-38, 122 S. Ct. at 2514-15; Trammel, 338 F.3d at 162-63; Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002). Deliberate indifference entails "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, the charged official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Phelps, 308 F.3d at 186 (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979).

20

Essentially, a defendant must, at a minimum, act with reckless disregard of a serious risk of harm. "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). However, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Phelps, 308 F.3d at 186 (quoting Farmer, 511 U.S. at 842, 114 S. Ct. at 1981).

B. Application

Assuming that Defendant Stewart ordered Plaintiff to use the meat slicing machine, the issue is whether reasonable jurors could conclude that his conduct rose to the level of deliberate indifference to an obvious and substantial risk to Plaintiff's health and safety, rather than being merely incorrect, negligent, and ill-advised. Courts in this Circuit have allowed claims to proceed to discovery or trial based on a prison official's ordering a prisoner to perform inherently dangerous tasks, such as using a defective ladder or cleaning an area of the prison where toxic fumes are known to exist. See, e.g., Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (requiring prisoner to use defective ladder, after being advised that the ladder was unsafe, resulting in a prisoner's falling and injuring his neck and back, stated a colorable constitutional claim); Jackson v. Goord, 664 F. Supp. 2d 307, 320 (S.D.N.Y. 2009) ("[A] reasonable fact-finder could

21

conclude, based on plaintiff's testimony about his prolonged exposure to the harmful effects of the materials and the inadequacy of the safety equipment, that plaintiff was exposed to levels of toxins and chemicals that posed an unreasonable risk of serious damage to his immediate or future health."); Baumann v. Walsh, 36 F. Supp. 2d 508, 515 (N.D.N.Y. 1999) (requiring a prisoner to climb along shelves and retrieve boxes from the top shelves of a storage room, without providing a ladder, where prisoner specifically expressed concern about the hazards involved, presents an issue for the jury as to whether the defendants were deliberately indifferent to a serious risk of harm).

Construing Plaintiff's claim as a constitutional one, falling under this line of cases, Plaintiff must set forth admissible evidence from which a reasonable juror could conclude that (1) use of the meat slicer by an untrained prisoner poses a substantial risk of serious harm; (2) Defendant Stewart was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) Defendant Stewart drew that inference. See Farmer, 511 U.S. at 837, 114 S. Ct. 1979. A reasonable juror could conclude that the meat slicer posed a substantial risk of harm, particularly when used by an individual untrained in its operation. The more difficult hurdle for Plaintiff, and perhaps fatal to this claim (assuming it were actually exhausted), is whether Plaintiff can meet the subjective element of a deliberate

22

indifference claim.

Plaintiff must show that Defendant Stewart's conduct rose to the level of at least criminal recklessness, because "only the deliberate infliction of punishment, not an ordinary lack of due care for prisoner interests or safety, lead[s] to liability." Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). Ordering Plaintiff to use the meat slicer serves an obvious practical purpose (i.e., slicing meat), and does not, without more, indicate that Defendant Stewart intended to inflict punishment upon Plaintiff. See Gomez v. Warden of the Otisville Corr. Facility, No. 99 Civ. 9954 (AGS), 2000 WL 1480478, at *6 (S.D.N.Y. Sept. 29, 2000) (dismissing Eighth Amendment claim because plaintiff "has failed to allege the criminal recklessness necessary to establish [defendant's] subjective intent to injure him"). Plaintiff has not alleged - much less set forth admissible evidence tending to show - that Defendant even knew Plaintiff was untrained and/or inexperienced in using such a machine. The mere fact that there was a policy that prohibited prisoners from using any sharp objects or machines, such as slicers, does not establish that Plaintiff was untrained in how to use the slicer. Plaintiff nowhere alleges that he told Defendant that he did not know how to operate the machine.[7]

_____

[7] Although the precise policy language has not been submitted to the Court, it appears that this prohibition was intended for the protection of correctional staff and inmates who could be objects of violence, rather than as a work protection for prisoners. (See Benjamin Decl. ¶ 7 ("Only the civilian cooks

Cf. Howard v. Headly, 72 F. Supp. 2d 118, 124 (E.D.N.Y. 1999) (constitutional claim regarding dangerous working conditions sustained because plaintiff showed defendant a doctor's note prohibiting him from performing work requested). Nor has Plaintiff suggested that the machine was in any way defective, as in the case of a rickety ladder, and more likely to injure its operator. See Gill, 824 F.2d at 195; see also Morgan v. Morgensen, 465 F.3d 1041, 1047 (9th Cir. 2005) (affirming denial of summary judgment, after plaintiff set forth facts that defendants forced him to work on a printing press, known to be defective, resulting in an injury to his hand). Thus, on this record, the constitutional dimension of this claim is questionable, at best.

In the Court's view, this claim is more reasonably construed as one sounding in negligence, which is not actionable under the United States Constitution. See, e.g., Jennings v. Horn, No. 05 Civ. 9435 (SAS), 2007 WL 2265574, at *5 (granting summary judgment against plaintiff who slipped on a wet floor as a pre-trial detainee, despite his repeated warnings to prison officials about the condition, because "slippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution"); Murray v. Michael, No. 03 Civ. 1434 (GJB), 2005 WL 2204985, at *13 (N.D.N.Y. Sept. 7, 2005) ("At worst,

---

who work in the kitchen are permitted to use these implements. This policy is to ensure the safety of the civilians, inmates, and Corrections Officers who work in the kitchen.").)

defendant Michael could have been negligent in having plaintiff climb the ladder without some sort of safety device. Negligence, however, does not rise to the level of a constitutional violation."). A reasonable juror might conclude that Defendant Stewart's decision was ill-advised, negligent, or even incorrect, but this will not assist Plaintiff at this stage, as he has no supportable constitutional claim.

In any event, this claim is unexhausted, see supra Section II, and thus, it is irrelevant whether this claim is construed as a constitutional one.[8]

## IV.  Plaintiff's Eighth Amendment Claim

Plaintiff contends that Defendants deprived him of constitutionally adequate medical care when they failed to take him to the clinic after he cut his finger.

### A. Legal Standard

Although a pretrial detainee's claims for deprivation of adequate medical care are analyzed under the Fourteenth Amendment's Due Process Clause, the standard is identical to the Eighth Amendment standard applicable to sentenced prisoners. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009). To demonstrate the

---

[8] Although not addressed in this Report and Recommendation, due to Plaintiff's failure to exhaust his administrative remedies, Defendant Stewart would likely succeed on his qualified immunity defense. To succeed, Defendant Stewart would argue that had he ordered Plaintiff to use the meat slicer, he was objectively reasonable in his belief that this did not violate a clearly established right under the Constitution.

deprivation of constitutionally adequate medical care by prison personnel, a plaintiff must come forward with facts demonstrating that each defendant acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976); see also Caizzo, 581 F.3d at 72; Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (noting that while prison officials may not be deliberately indifferent to a prisoner's serious medical needs, "not every lapse in medical care is a constitutional wrong") (citing Farmer, 511 U.S. at 832, 114 S. Ct. at 1976). There is a two-part inquiry when determining whether a lapse in medical care has risen to the level of a constitutional wrong: one objective, the other subjective. See Salahuddin, 467 F.3d at 279.

Courts conduct an objective analysis to determine whether "the alleged deprivation of adequate medical care [was] 'sufficiently serious.'" See id. (quoting Wilson, 501 U.S. at 298, 111 S. Ct. at 2324). Determining whether the care a prisoner received meets the objective standard requires an additional two-part inquiry. See id. at 279. First, courts focus on the adequacy of the care. Under this part of the analysis, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 279-80 (quoting Farmer, 511 U.S. at 845, 114 S. Ct. at 1983). Second, courts focus on the seriousness of a plaintiff's medical needs.

26

Id. at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)); see also Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003); Sully-Martinez v. Glover, No. 00 Civ. 5997 (GEL), 2001 WL 1491278, at *4 (S.D.N.Y. Nov. 26, 2001) ("[M]ore than minor discomfort or injury is required in order for a plaintiff to demonstrate a serious medical need."). Determining the seriousness of a medical condition depends on the deprivation of care that the prisoner has alleged. If the prisoner has alleged that the prison failed to treat his condition at all, then courts will consider the severity of the medical condition itself. However, if the alleged violation is a disruption or delay in treatment, then "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003); see also Salahuddin, 467 F.3d at 280. Even a delay in treating an insignificant medical condition may rise to a constitutional violation where the delay causes the condition to worsen and creates a substantial risk of injury. Smith, 316 F.3d at 13-14.

27

The subjective prong of the deliberate indifference analysis focuses on whether the charged official acted "with a sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280 (citing Wilson, 501 U.S. at 300, 111 S. Ct. at 2325). "In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm." Id. (emphasis added). Rather, the charged official must "act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (citing Farmer 511 U.S. at 836-37, 114 S. Ct. at 1978). A prison official's conduct is only deemed to be deliberately indifferent if the official knows of and disregards an excessive risk to inmate health or safety. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Essentially, a defendant must, at a minimum, act with reckless disregard of a serious risk of harm. However, "recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." Salahuddin, 467 F.3d at 280. Thus, "[t]he charged official must be subjectively aware that his conduct creates such a risk," and if a defendant sincerely and honestly believes that his conduct does not create such a risk, "even if objectively unreasonable," he does not possess a sufficiently culpable state of mind. Id. at 281.

    B.  Application

Plaintiff alleges that Defendants Stewart, Benjamin and Lewis deprived him of constitutionally adequate medical care when they purportedly delayed his access to the clinic on June 3 and June 4, 2008.   Defendants   contend   that   Plaintiff's   injury   was   not sufficiently serious, and that Defendants did not act with the requisite state of mind to give rise to an Eighth Amendment violation.

Plaintiff contends that he was deprived of medical care for a period of thirty hours, until Defendant Lewis finally contacted a captain who escorted him to the prison's medical clinic. Therefore, the deprivation of medical care at issue is the delay in treatment, and it is the seriousness of the risk posed by that delay that is relevant to Plaintiff's Eighth Amendment claim. <u>See</u> <u>Smith</u>, 316 F.3d at 186.

Even drawing all inferences in Plaintiff's favor, the delay in Plaintiff's medical care was not sufficiently serious to allow the claim to survive summary judgment.   Viewing the three relevant criteria – (1) whether a reasonable doctor or patient would find the condition important and worthy of comment, (2) whether the condition "significantly affects [a plaintiff's] daily activities," and (3) whether it causes "chronic and substantial pain" – Plaintiff cannot satisfy any of these elements. <u>See</u> <u>Brock</u>, 315 F.3d at 162.

Plaintiff merely cut his finger.   Plaintiff maintains that

Doctor Kerrison commented on the delay of his treatment, specifically that he stated that if Plaintiff had not arrived at the clinic when he did, his finger would have been amputated. (See Pl. Dep. at 49:1-6.) Doctor Kerrison's statement to Plaintiff is inadmissible hearsay and cannot be used to defeat a motion for summary judgment. See, e.g., Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 357 (2d Cir. 1997). Plaintiff has not submitted a declaration from Dr. Kerrison, nor did he depose the doctor, and discovery is now closed. In any event, this prognosis is not stated in the prison's Injury to Inmate Report which Doctor Kerrison filled out. (See Berson Decl. Ex. D, at 057-058.) Moreover, once Plaintiff was transferred to Elmhurst Hospital for further evaluation and treatment, the treating physicians made no mention of amputation. In fact, the Elmhurst notations indicate that Plaintiff's injury did not even require stitches and that his pain level at time of discharge was a 1 out of 10. (See Berson Decl. Ex. D, at 125.)

Plaintiff further maintains that his injury affected his daily activities by hindering his ability to write and to lift things. (See Pl. Dep. at 46:15-24.) This claim is controverted by the fact that Plaintiff admits to being able to legibly write both the grievance on June 3, the day of the injury, and the complaint on September 11, 2008, with his injured hand. (Id. at 47:1-12.)

30

Plaintiff also claims that he remains in pain and experiences occasional stiffness in his finger. (<u>Id</u>. at 46:23-24.) Nevertheless, Plaintiff signed a Patient Refusal of Treatment form on September 17, 2008 because he was "feeling healed." (<u>Id</u>. at 49:17-50:12; <u>see also</u> Berson Decl. Ex. D, 105.)

Plaintiff has failed to put forth any admissible evidence tending to show that he suffered from a "serious medical condition" defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Flowers v. City of New York</u>, 668 F. Supp. 2d 574, 579 (S.D.N.Y. 2009) (citing <u>Hathaway</u>, 37 F.3d at 66); <u>see also</u> <u>Sully-Martinez</u>, 2001 WL 1491278, at *2, 5 (chronic skin fissure in finger, which ultimately required surgery, found to be insufficiently severe as to satisfy requirement of serious medical condition); <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 306, 311 (S.D.N.Y. 2001) (where skin was ripped off a finger, leaving it bleeding, red and burning, plaintiff failed to satisfy the objective prong because it did not pose a substantial risk of serious harm); <u>Bonner v. New York City Police Dep't</u>, No. 99 Civ. 3207 (AGS), 2000 WL 1171150, at *4 (Aug. 17, 2000) (swollen hand, discomfort and one finger that will not close is not sufficiently serious); <u>Rivera v. Johnson</u>, 95-CV-0845E(H), 1996 WL 549336, at *6-7 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which

correspondingly merits constitutional protection").

Plaintiff's injury was simply not sufficiently serious to satisfy the objective standard of constitutionally inadequate medical care, and the 30-hour delay in his treatment did not cause his condition to worsen in any way. See Smith, 316 F.3d at 13-14.

Because Plaintiff cannot demonstrate that he had a serious medical condition, there is no need to address the subjective prong of the standard. The Court notes, however, that since Plaintiff's claim "does not pass the objective test, it must necessarily fail under the subjective standard. In order for the correctional officers to have a culpable state of mind, they must 'know[] of and disregard[] an excessive risk to inmate health or safety.'" Warren v. Purcell, No. 03 Civ. 8736 (GEL), 2004 WL 1970642, at *9 (S.D.N.Y. Sept. 3, 2004) (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's medical care claim.[9]

## CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion for summary judgment be granted, and all claims against Defendants Stewart, Benjamin, and Lewis be dismissed.

---

[9] Because the Court has found that Plaintiff failed to exhaust this claim, and none of the Defendants were deliberately indifferent to Plaintiff's serious medical needs, there is no need to address whether they are entitled to qualified immunity.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, U.S.D.J., and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002); Spence v. Superintendent, 219 F.3d 162, 174 (2d Cir. 2000).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: May 14, 2010
       New York, New York

33